**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DANARIS BATISTA RONDA,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-26-565-J** |
| | ) |
| **FRED FIGUEROA, et al.,** | ) |
| | ) |
| **Respondents.**[1] | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Danaris Batista Ronda, a noncitizen[2] and Cuban national proceeding with

counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under

28 U.S.C. § 2241 her detention by U.S. Immigration and Customs Enforcement ("ICE").

United States District Judge Bernard M. Jones, II referred this matter to the undersigned

Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).   Doc. 3.   The

undersigned set an expedited briefing schedule and the Petition is at issue.[3]   Doc. 6.   For

---

[1] Markwayne Mullin was confirmed as Secretary of the Department of Homeland Security on March 23, 2026.  He replaces Kristi Noem and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).  Todd Blanche was announced as Acting Attorney General on April 2, 2026.  He replaces Pamela Bondi and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] On March 24, 2026, the undersigned ordered Respondents to respond to the Petition not later than March 31, 2026.  Doc. 6.  The undersigned also ordered Petitioner to file any optional reply within three business days.  *Id.*  Respondents timely filed a response, Doc. 8, making Petitioner's reply due not later than April 3, 2026.  On April 6, 2026, Petitioner purported to file an untimely reply brief.  Doc. 9.  Because Petitioner did not seek leave to

the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days at which the government would bear the burden of proof or otherwise to release her if there is no hearing within that time.

## I.    <u>Background</u>

Petitioner, a citizen of Cuba, entered the United States on or about March 26, 2022, without admission or inspection near Eagle Pass, Texas.  Pet. at 12.  On March 27, 2022, Petitioner alleges ICE placed her into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear ("NTA") and charged her with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Pet. at 12.  On the same day, ICE released Petitioner on her own recognizance.  *Id.*; Doc. 1-2 (Order of Release on Recognizance).

In January 2026, ICE re-arrested Petitioner when she went to an ICE office to inquire about her immigration proceedings.  Pet. at 12; Doc. 8-1 (Petitioner's Warrant for Arrest).  Petitioner alleges she has not been advised of any violations of her conditions of release and has not been afforded a bond hearing.  *Id.*  On January 29, 2026, ICE issued a subsequent NTA continuing removal proceedings against Petitioner and again charging her with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*; Doc. 1-1 (January 2026 NTA).

file out of time or otherwise explain why her reply brief is untimely, the undersigned did not consider it.  Nonetheless, Petitioner's reply brief would have no impact on the recommended relief.

Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Resp. at 2. Petitioner did not allege whether she requested a bond hearing. Such a request, though, would likely be futile because all immigration judges ("IJs") are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

When Petitioner filed her Petition, she was detained at Diamondback Correctional Facility in Watonga, Oklahoma. *Id.* at 2; Doc. 1-3. She remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Apr. 9, 2026).

## II.    <u>Petitioner's Claims</u>

Petitioner asserts two counts in her Petition.

- **Count I: Violation of Due Process**. Petitioner alleges her continued detention without an individualized bond redetermination hearing violates her right to due process and Respondents revoked her previous release in an arbitrary manner, which violates her right to procedural due process. Pet. at 13-15.

- **Count II: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges her continued detention under § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to those, like her, who previously entered the country and have been residing in the United States before being apprehended and placed in removal proceedings. Pet. at 15-16.

She asks the Court to "issue a Writ of Habeas Corpus requiring that Respondents release Petitioner immediately," or, "alternatively, order a prompt bond hearing where Respondents bear the burden of proof." Pet. at 16 (citation modified). Petitioner also

3

requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[4] *Id.*

### III.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.    Analysis

#### A.    Section 1226(a) applies to Petitioner's detention.

The two sections of the INA at issue are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), she is not entitled to a bond hearing.  On the other hand, Section 1226(a) more generally authorizes detention of a noncitizen pending

---

[4] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, she must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B).  Thus, the Court need not address this request at this juncture.

removal proceedings and entitles the noncitizen to a bond hearing.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

Petitioner argues she is being held in violation of the INA and § 1225(b)(2) does not apply to her because she had "previously entered the country and [has] been residing in the United States." Pet. at 15.  Petitioner contends "noncitizens who entered the country years ago without inspection and are later apprehended are subject to detention under 8 U.S.C. § 1226, which allows for an individualized bond hearing for the noncitizen." Pet. at 9. Respondents contend Petitioner is an "applicant for admission" and therefore properly detained under § 1225(b)(2)(A). Resp. at 7.  Further, Respondents claim (1) "applicants for admission" must necessarily be "seeking admission," (2) § 1225(b)(2)(A) is not limited only to noncitizens "arriving" in the United States, (3) § 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A), and (4) any overlap between the two provisions does not undermine ICE's interpretation of the two statutes. Resp. at 6-13.

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue.  For the reasons stated below, and adopting this Court's reasoning in *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026), the undersigned recommends the Court grant the Petition in part to the extent Petitioner seeks a bond hearing under § 1226(a).

First, the INA limits the scope of the term "seeking admission" in § 1225(b)(2)(A) so that section does not apply to noncitizens already living in the United States when apprehended. Section 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Coreas*, 2026 WL 541151, at *2. "If all 'applicants for admission' are also 'seeking admission,' then § 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that make any part of the statute superfluous." *Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *2 (W.D. Okla. Nov. 26, 2025) (citation modified). The undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry—not those like Petitioner who have resided in the United States for years and were not arrested when trying to cross the border.

In addition, the legislative history and recent amendment of § 1226 indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended. Notably, after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Department of Justice explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified). Further, Congress' recent amendment to § 1226 mandating detention for certain criminal noncitizens renders Respondents' interpretation of § 1225(b)(2)(A) superfluous.

6

Finally, this Court, Chief Judge DeGiusti, Judge Palk, Judge Russell, Judge Heaton, and myriad district courts have recently applied § 1226(a) to govern detention of noncitizens like Petitioner.[5] This conclusion is also in accord with the Seventh Circuit, which rejected the statutory interpretation of § 1225(b)(2) as urged by Respondents. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). *But see Avila v. Bondi*, No. 25-3248, --- F.4th ----, 2026 WL 819258, at *3-6 (8th Cir. Mar. 25, 2026) (agreeing with Respondents' interpretation); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501-08 (5th Cir. 2026) (same).

The undersigned agrees with this Court's reasoning, the majority of Judges in this District, and the great weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A). *See Coreas*, 2026 WL 541151, at *2 (finding § 1226(a) governs a similarly situated petitioner's detention and "agree[ing] with the Seventh Circuit's reasoning, the majority of the other courts in this district, the overwhelming number of other courts that recently addressed this question, and this Court's prior rulings"); *accord Puentes-Puentes v. Grant*, No. CIV-26-192-J, 2026 WL 657199, at *2 (W.D. Okla. Mar. 9, 2026) (concluding "unless the Tenth Circuit and/or

---

[5] *See, e.g., Coreas*, 2026 WL 541151, at *2; *Lopez v. Corecivic Cimarron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *1 (W.D. Okla. Jan. 21, 2026); *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025); *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025). Two Judges in the District have applied § 1225(b)(2)(A) to a similarly situated petitioner. *See Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *12 (W.D. Okla. Dec. 26, 2025).

Supreme Court hold differently, the matter is well settled in this Court and further discussion is unwarranted" (citation modified)).[6]

Accordingly, the undersigned recommends the Court apply § 1226(a) to govern Petitioner's current detention.  The Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) before a neutral IJ within five business days or otherwise release her if she does not have a lawful bond hearing within that period.

### B.    Due Process also entitles Petitioner to a bond hearing.[7]

Petitioner also alleges her continued detention without adequate processes or an individualized hearing violates her due process under *Mathews v. Eldridge*.  Pet. at 13-15. As separate grounds for reaching a bond hearing, the undersigned concludes that because

---

[6] This conclusion is further supported by the fact Petitioner was detained and later released on her own recognizance under § 1226 in March 2022.  Doc. 1-2 at 1; *see, e.g.*, *Bello Chacon v. Hermosillo*, No. 25-CV-02299, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226").

[7] Respondents briefly allege this Court lacks jurisdiction to review DHS's "discretionary judgment regarding application" of § 1226 and "thus, this Court lacks jurisdiction to consider the revocation of Petitioner's release."  Resp. at 14 (citing 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)).  However, this Court has held it has jurisdiction over a noncitizen's habeas petition under both § 1226(e) and § 1252. *See, e.g., Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026) (holding § 1226(e) does not deprive the Court of jurisdiction over constitutional claims or questions of law concerning the statutory basis for detention); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *1 (W.D. Okla. Nov. 20, 2025) (holding the Court has jurisdiction to consider whether petitioner is entitled to a bond hearing under § 1252); *accord Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

§ 1226(a) applies to Petitioner's detention, she is owed the due process provided under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507,

529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. at 522, but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)). The undersigned is not persuaded by Respondents' argument that "Petitioner has the power to free herself," Resp. at 15, by leaving the country, especially in light of her pending removal proceeding.

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford her no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty

10

interest."). The undersigned rejects Respondents' bare-bones argument that there is "virtually no risk of an erroneous deprivation" because Petitioner "has not complied with the immigration laws" and she might be entitled to parole for "urgent humanitarian reasons or significant public benefit." Resp. at 15-16 (citing 8 U.S.C. § 1182(d)(5)(A)).

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh her liberty interest or risk of erroneous deprivation. *See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026). Significantly, Petitioner has had no meaningful opportunity for an immigration judge to consider whether she is a

11

danger to society or a flight risk since her re-detention. Further, the fact Petitioner has been living in the United States for more than three years with no criminal history and that she was re-detained while at an ICE facility checking on her removal proceedings weighs in her favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)).

Accordingly, in addition to the INA violation, Petitioner's continued detention without a bond hearing violates her due process liberty interests, and she is entitled to a prompt bond hearing before an immigration judge.

### C. The Court should order the government to bear the burden of proof at Petitioner's bond hearing.

Petitioner further asserts "due process requires the government to bear the burden of proving, at any bond hearing, that the noncitizen is a danger, flight risk, or threat to national security." Pet. at 11. A noncitizen generally has the burden at a bond hearing to show her "release would not pose a danger to property or persons" and she "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

As discussed above, the Court should grant habeas relief in part and grant Petitioner a bond hearing because her detention is governed by § 1226(a) and due process requires it. As for the burden of proof at a bond hearing, the Court should adopt the approach of other courts in the Tenth Circuit and nationwide and use the *Mathews* balancing test to assess "the type of process required in a given case." *Vizguerra-Ramirez v. Baltazar*, No. 25-CV-

12

00881, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025); *see also, e.g., Velasquez Salazar*, 806 F. Supp. 3d at 1245 (holding the *Mathews* framework supports shifting the burden at a § 1226 bond hearing to the government); *Hernandez-Lara*, 10 F.4th at 39 (holding the government bears the burden at a bond hearing after prolonged detention under § 1226(a)); *Velasco Lopez,* 978 F.3d at 854 (same). *But see Miranda v. Garland*, 34 F.4th 338, 358-65 (4th Cir. 2022) (applying *Mathews* to conclude due process does not require the government to bear the burden at a § 1226(a) bond hearing for a noncitizen whose detention is not "indefinite and potentially permanent").

Under the circumstances presented here, the undersigned concludes all three *Mathews* factors favor Petitioner and placing the burden of proof on the government at any bond hearing under § 1226(a).  First, as discussed above, Petitioner has a fundamental interest in liberty and being free from official restraint.  *See Requejo Roman v. Castro*, No. 25-CV-01076, --- F. Supp. 3d. ---, 2026 WL 125681, at *9 (D.N.M. Jan. 12, 2026) (finding the first *Mathews* factors weighs in favor of the government bearing the burden of proof because "being free from detention is the most elemental of liberty interests" (citation modified)).  Accordingly, the first *Mathews* factor favors Petitioner.

Second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" also favor Petitioner.  *Mathews*, 424 U.S. at 335.  Notably, requiring Petitioner to bear the burden of proof creates a risk of an erroneous deprivation where Respondents re-detained her without any alleged violation of law or conditions of release.  Petitioner had been released from ICE custody, lived in the country for more than three years, complied with

13

all immigration requirements, and had no criminal history. *See* Pet. at 12. ICE's decision to change course, re-detain Petitioner, and deprive her of physical liberty without changed circumstances or reason for re-detention weighs in Petitioner's favor. *See Requejo Roman*, 2026 WL 125681, at *9 (finding the "risk is even more pronounced" where petitioner had been released on bond previously and requiring the government to justify detention "reduces the risk of an ongoing and erroneous deprivation of Petitioner's liberty"); *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *4 (D. Colo. Sep. 16, 2025) (finding "a severe risk of erroneous deprivation" based in part on respondents' "failure to identify any criminal record or conviction Petitioner has incurred").

Additionally, assigning the burden of proof to Petitioner puts her in a "difficult" position of "proving a negative," *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183-84 (D. Colo. 2024)—specifically, proving she is neither a flight risk nor a danger to the community despite her more than three years of apparent compliance with the law and any ICE conditions. To the extent the government may contend risk factors warrant Petitioner's continued detention, the information establishing those risks is likely within the government's possession. *Accord Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4 (W.D. Okla. Feb. 20, 2026) (noting information justifying a noncitizen's re-detention would be contained in the government's own files rather than in the possession of a petitioner detained in ICE custody). Thus, requiring the government to bear the burden of proof for Petitioner's continued detention helps to cure "the risk of an erroneous deprivation," *Mathews*, 424 U.S. at 335, of her liberty interests after the government's unilateral decision to re-detain her. The second *Mathews* factor favors Petitioner.

14

Finally, "the administrative burden of a bond hearing is minimal." *Arostegui-Maldonado*, 794 F. Supp. 3d at 943. Having determined a bond hearing must be held, any additional costs from shifting the burden of proof to the government are negligible. Placing the burden of proof on the government promotes the government's interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Moreover, the government has not alleged or demonstrated any changed circumstances since Petitioner's previous release in March 2022 to support her recent re-detention. *See Requejo Roman*, 2026 WL 125681, at *9 (finding the third factor supports shifting the burden to the government because "the Government has not demonstrated any change in circumstances" since petitioner's prior release on bond).

In sum, all three *Mathews* factors support shifting the burden of proof at Petitioner's bond hearing to the government. The undersigned acknowledges that due process may not require this result in all cases. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (recognizing habeas corpus as "an adaptable remedy" where the "precise application and scope" can "change[] depending upon the circumstances"). But in cases like this, where Petitioner was previously released years ago and ICE re-detained her without any allegation that she violated the law or conditions of release, the burden should be shifted to the government at a bond hearing to justify her continued detention. *See Mieles-Parraga v. Bondi,* No. 26-CV-00646, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *Abanil v. Baltazar*, No. 25-CV-4029, --- F. Supp. 3d ---, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (holding "the weight of

15

authority in this District is clear: it is the Government's burden to justify a noncitizens continued detention at a bond hearing" (citation modified)); *Requejo Roman*, 2026 WL 125681, at *8-10 (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *see also Singh v. Grant*, No. CIV-26-88-G, Doc. 14 at 17-22 (W.D. Okla. Mar. 30, 2026) (R&R) (Judge Maxfield recently recommending the same).

The Court should also follow other district judges in this Circuit concluding the government must prove Petitioner is a flight risk or danger to the community by clear and convincing evidence. *See Requejo Roman*, 2026 WL 125681, at *10 (holding "the standard of proof the Government must meet is one of clear and convincing evidence" (citation modified)); *Vizguerra-Ramirez*, 2025 WL 3653158, at *16 (applying § 1226(a) to a similarly situated petitioner and ordering a bond hearing at which "the Government must prove by clear and convincing evidence that [she] is either a flight risk or a danger to the community in order to justify continued detention"); *L.G.*, 744 F. Supp. 3d at 1186 ("In sum, in order to continue detaining Petitioner under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence."); *see also Singh v. Grant*, No. CIV-26-88-G, Doc. 14 at 17-22 (W.D. Okla. Mar. 30, 2026) (R&R) (Judge Maxfield recommending the same); *Singh v. Grant*, No. CIV-26-279-J, Doc. 11 at 17-19 (W.D. Okla. Apr. 3, 2026) (R&R) (same); *Drozdov v. Lyons*, No. CIV-26-365-SLP, Doc. 12 at 13-19 (W.D Okla. Apr. 3, 2026) (R&R) (the undersigned recommending the same).

This approach is consistent with other contexts where the government must justify a person's detention by clear and convincing evidence to meet due process demands. *See, e.g.*, *Foucha*, 504 U.S. at 86 (confinement of "insanity acquittees who are no longer mentally ill"); *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (termination of parental rights); *Addington v. Texas*, 441 U.S. 418, 432-33 (1979) (involuntary civil commitment proceedings to a mental hospital); *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 286 (1966) (deportation of a noncitizen); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization of an individual).

In coming to this conclusion, the undersigned has considered the burden of proof applicable to the government for pre-trial detention of a criminal defendant under the Bail Reform Act. In that context, "the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citation modified); *see, e.g.*, *Garcia v. Bondi*, No. 26-CV-01012, 2026 WL 835766, at *4 (D. Colo. Mar. 26, 2026) (applying burden of proof from criminal pre-trial detention to immigration habeas proceedings and "finding no persuasive justification to conclude that a noncitizen must face different standards for the same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry" (citation modified)). The undersigned has also considered the approach akin to Judge Mitchell's recent Report and Recommendation, where she concluded after review of the *Mathews* factors that a similarly situated petitioner should be immediately

17

released and not re-detained without a pre-deprivation hearing. *Rodriguez-Navarrete v. Mullin*, No. CIV-26-224-SLP, Doc. 11, at 14-17 (W.D. Okla. Apr. 3, 2026) (R&R).

The undersigned is persuaded after a careful *Mathews* analysis to recommend the predominant view from judges in this Circuit—that a detainee like Petitioner is entitled to a § 1226(a) bond hearing where the government bears the burden of proof by clear and convincing evidence for her continued detention.[8]   Accordingly, at Petitioner's bond hearing, the government should bear the burden to prove by clear and convincing evidence that she is either a flight risk or a danger to the community to justify continued detention.

## V.      Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner within five business day a bond hearing under 8 U.S.C. § 1226(a) at which the government bears the burden of proof or otherwise release Petitioner if she has not received a lawful bond hearing within that period.  The undersigned further recommends the Court require the government to bear the burden at any bond hearing to prove by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community to justify

---

[8] *See also Vizguerra-Ramirez*, 2025 WL 3653158, at \*15 & 15 n.5 (analysis by Judge Wang explaining that she imposed a burden of proof on the government like that of criminal, pre-trial detention in a 2019 case involving a noncitizen's detention, but "is persuaded by the weight of authority since [her 2019 decision] to reconsider [her] prior analysis," and now concluding "clear and convincing evidence is the appropriate evidentiary standard" for the government at a bond hearing for an immigration habeas petitioner).

continued detention.  Finally, the Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objection must be filed not later than **April 16, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **April 21, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 9th day of April, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

19